Mark S. Bostick (Bar No. 111241)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, 24th Floor
Oakland, California 94607-4036
Telephone: (510) 834-6600
Fax: (510) 834-1928
Email: mbostick@wendel.com;

Attorneys for Michael G. Kasolas, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br>FOX ORTEGA ENTERPRISES, INC.,<br>dba PREMIER CRU,<br>Debtor. | Case No. 16-40050-WJL<br>Chapter 7<br>**MOTION FOR ORDER APPROVING COMPROMISE WITH AMERICAN EXPRESS** |

Michael G. Kasolas ("Trustee"), the duly appointed and acting trustee of the above-captioned estate, hereby moves under Bankruptcy Rule 9019 for an order approving his proposed compromise with American Express National Bank, successor by merger to American Express Bank, FSB, and formerly known as American Express Centurion Bank, American Express Travel Related Services Company, Inc., and American Express Company ("American Express") as summarized in the Trustee's *Notice and Opportunity for Hearing on Motion for Order Approving Compromise with American Express* ("Notice") attached hereto as **Exhibit 1**. This motion is supported by the accompanying Declaration of Mark S. Bostick, which attaches as Exhibit A a true and correct copy of the Settlement Agreement between the parties. For the reasons stated in the Notice, the Trustee submits that the proposed compromise is fair and equitable and in the best interests of the creditors and the estate.

This motion is made pursuant to Bankruptcy Local Rule 9104-1(b)(3). As set forth in the

Notice, any opposition to the motion must be served and filed no later than 21 days from the date of service of the Notice, i.e. by **July 23, 2019**. If a timely objection or request for hearing is served and filed, the undersigned will provide such objecting party with not less than 7 days' written notice of the hearing on such objection. If no timely objection or request for hearing is filed and served, an order approving the compromise may be entered by default, without further notice or hearing.

DATED: July 2, 2019

WENDEL, ROSEN, BLACK & DEAN LLP

By: /s/ *Mark S. Bostick*
Mark S. Bostick
Attorneys for Michael G. Kasolas, Trustee

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>FOX ORTEGA ENTERPRISES, INC.,<br>dba PREMIER CRU,<br><br>Debtor. | Case No. 16-40050-WJL<br><br>Chapter 7<br><br>**NOTICE AND OPPORTUNITY FOR HEARING ON MOTION FOR ORDER APPROVING COMPROMISE WITH AMERICAN EXPRESS** |

**TO: THE TWENTY LARGEST UNSECURED CREDITORS, SECURED CREDITORS, PARTIES REQUESTING SPECIAL NOTICE, THE U.S. TRUSTEE, THE DEBTOR AND OTHER INTERESTED PARTIES:**

**PLEASE TAKE NOTICE THAT** Michael G. Kasolas, the chapter 7 trustee of the bankruptcy estate of Fox Ortega Enterprises Inc. ("Debtor"), has filed a motion under Federal Rule of Bankruptcy Procedure 9019 (the "Motion") for an order approving his settlement agreement with American Express National Bank, successor by merger to American Express Bank, FSB, and formerly known as American Express Centurion Bank, American Express Travel Related Services Company, Inc., and American Express Company (collectively "American Express") based on the terms and merits as summarized below.

### The Compromise Terms

Under the Settlement Agreement, a copy of which is attached to the Declaration of Mark S. Bostick filed in support of the Motion, the trustee will release American Express from all claims in exchange for its payment of $1,375,000.00.

### Factual Background

The Debtor filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 8, 2016 (the "Petition Date"), and Kasolas was appointed trustee. John Fox, the Debtor's president, admitted in his Plea Agreement that the Debtor operated, in part, as a fraudulent enterprise by selling some "pre-arrival wine" that it never purchased, and that he embezzled from the Debtor by having it pay certain charges on his personal American Express credit card for personal items. In addition to having a business credit card with American Express, the Debtor also had a merchant account with American Express under which its customers charged purchases from the Debtor on their American Express cards. American Express terminated its merchant account with the Debtor in or about June 2015.

The Debtor's bank records reflect that in the seven year period prior to the Petition Date the Debtor paid American Express $6,144,448.67 on the personal credit card of John Fox and it paid $1,465,480.17 on the personal credit card of Saul Gevertz, the debtor's chief financial officer. John Fox's credit card statements reflect that between $1,400,000.00 and $1,866,000.00 of the charges paid by the Debtor were for personal expenditures of John Fox (the "Personal Charges") and the balance of charges between $4,278,448.60 and $4,744,448.60 were for the Debtor's business-related expenses and benefit, mostly purchases of wine (the "Fox Business Charges"). The Debtor's bank records and Gevertz's credit card statements reflect that Gevertz reimbursed the Debtor for all of the personal charges on his credit card and that the balance of $906,695.00 for business-related charges (the "Gevertz Business Charges") was paid by the Debtor. The payments made on account of the Fox Business Charges and the Gevertz Business Charges are referred to below as the "Business Charges."

The Debtor's records further reflect that, within 90 days before the Petition Date, the Debtor transferred the sum of $288,357.71 in the form of credits and offsets to reimburse American Express cardholders who disputed charges on their cards and requested refunds, asserting that the Debtor failed to timely deliver previously purchased wine (the "Chargeback Transfers").

In January 2018, the trustee filed a complaint against American Express, A.P. No. 18-04036-WJL, to avoid and recover the Personal Charges and the Business Charges as fraudulent transfers and to avoid and recover the Chargeback Transfers as preferential transfers.

## Merits of the Compromise

The trustee asserts that the Debtor's payments on the Personal Charges are avoidable because it received nothing in exchange for them and they were part of an embezzlement scheme Fox admitted to in his Plea Agreement (resulting in his conviction on different charges). American Express disputes that the Debtor did not receive value for the transfers (asserting some were compensation to Fox and that, because the Personal Charges were paid with transfers that mostly paid Business Charges and the concept of reasonably equivalent value does not require a dollar-for-dollar transaction, the Debtor received a reasonably equivalent value in exchange for all of the transfers. American Express also disputes the amount the trustee characterizes as Personal Charges and his alleged right to reach back seven years on the claim. If further contends that the Debtor was solvent prior to 2013 (such that, it contends, at least the transfers prior to that date are unavoidable). If found correct on any of its contentions, the value of the Personal Charges claim could be reduced to a sum less than $650,000.00 or possibly even to $0.00. Despite American Express's asserted defenses, the trustee believes that his claim to avoid and recover the Personal Charges is strong.

The trustee's claim to avoid and recover the Business Charges is far more problematic. Payments made on third party debts incurred for the benefit of the debtor are protected from avoidance under the "indirect benefit" doctrine adopted by the Ninth Circuit in *Frontier Bank v. Brown*, 371 F. 3d 805 (9th Cir. 2004). The Business Charges on Fox and Gevertz's personal credit cards by definition benefitted the Debtor, indirectly if not directly: they were largely for purchases of wine to cover unfulfilled orders by the Debtor's customers. However, to sustain the defense, the transferee must also show that it received the transfers in good faith, i.e. without knowledge of the Debtor's fraudulent enterprise or insolvency. In this case, American Express's merchant account group received demands for chargebacks on their credit cards from the Debtor's customers complaining of non-delivery. American Express, however, contends that (i) prior to December 2015, the rate of chargeback reimbursement demands from cardmembers was not unusual, and (ii) in any event the consumer card group of American Express, the transferee on this Business Charge claim, is an entirely separate business unit that cannot be imputed with any knowledge of the merchant account group. See, e.g., *Desmond v. American Express Centurion Bank (In re Callas)*, 557 B.R. 647, 656-57 (Bankr. N.D. Ill. 2016) (rejecting Trustee's argument that American Express was on inquiry notice of voidability of transfer based on various "red flags", noting that "American Express is a credit card company that processes a vast number of routine transactions on a daily basis[, and t]he cost of imposing a general duty to inquire on such a commercial entity would be staggering," and further noting that the "likelihood of bad faith ... is lessened" when the entity involved "is a commercial enterprise handling transactions in a routine fashion") (citation omitted) (emphasis in original); and *AIG Global Sec. Lending Corp. v. Banc of America Sec. LLC* (S.D.N.Y. May 2, 2006), 2006 WL 1206333, at *2 (rejecting imputation of knowledge of all corporate employees to particular individuals, and citing multiple supporting cases, including *Midfirst Bank, SSB v. C.W. Haynes & Co.*, 893 F.Supp. 1304, 1316 (D.S.C. 1994) ("The fact that an employee in one department of a bank has knowledge of the facts does not cause that knowledge to be imputed to another department where there was no evidence that there was a pattern or duty of communicating between the different departments"), aff'd, 87 F.3d 1304 (4th Cir. 1996)). It further contends that it had no knowledge or cause for inquiry notice of the Debtor's fraud or insolvency prior to December 2015. No discovery on this issue has been taken. The trustee nonetheless believes that it is likely that American Express will be able to establish good faith for purposes of invoking the indirect benefit rule protection, and/or the provision of value directly to the Debtor, as to most if not all of the transfers that paid Business Charges.

The trustee's claim to avoid the Chargeback Transfers as preferential transfers is also problematic. American Express disputes the claim, contending that, as an initial matter, any refunds or chargebacks over this period were transfers of funds back to the Debtor's own customers, which in that instance were the

Case: 16-40050   Doc# 794   Filed: 07/02/19   Entered: 07/02/19 13:24:28   Page 5 of 7

creditors to whom the Debtor owed antecedent debts satisfied by those transfers. In this particular capacity, American Express operates as nothing more than the electronic processor or "conduit" of the transaction from the Debtor to its customer, and is not the recipient or beneficiary of the funds moving from one party to the other. In addition, American Express contends that both the refund and chargeback processes at American Express are entirely automated, are in no event initiated by anyone at American Express, and were handled in a standard fashion in every case, both prior to and during the preference period. In this regard, each transfer was made in the ordinary course of the established business relationship between the parties, providing AmEx with a complete defense under § 547(c)(2)(A). American Express also asserts it would have an additional defense based on the fact that all refund and chargeback requests were processed pursuant to the routine and industry-standard terms of the applicable card acceptance agreement and merchant regulations agreed upon between the parties, meaning that each transfer occurred in accordance with ordinary business terms under § 547(c)(2)(B). Subject to proof, including a forensic accounting to establish that the Debtor operated as a Ponzi scheme, the trustee disputes American Express's contentions and asserts that the ordinary course of business defense does not apply either because (1) American Express terminated the merchant account in June 2015, prior to the preference period or (2) the Ponzi scheme exception to the defense applies under *Henderson v. Buchanan*, 985 F. 2d 1021, 1025 (9th Cir. 1993). John Fox has admitted that the Debtor operated as a fraudulent enterprise in a manner that was akin to a Ponzi scheme, but there is as yet no finding that the Debtor's operation was primarily or wholly a Ponzi scheme. Nor would such a finding necessarily invalidate the ordinary course defense as to every, or perhaps any, transfer, since the provisions and procedures for handling any tailing chargeback requests by the Debtor's customers would have survived any termination of the merchant account. To establish whatever Ponzi scheme presumption that could be obtained, the trustee may be required to retain a forensic accountant to do a complete review of the Debtor's transactions to establish that it operated as a Ponzi scheme. The expense of such an accounting could well exceed the stake. The trustee gives this claim at most a 50/50 chance of success and expects that it could be very expensive to prosecute.

In view of these considerations, the trustee submits that the proposed compromise is fair and reasonable and in the best interest of creditors and the estate under the factors set forth under *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377, (9th Cir. 1986), cert denied sub nom *Martin v. Robinson*, 479 U.S. 854 (1986), i.e., (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors and a proper deference to their reasonable views. *Id* at 1381. Here, as shown, the trustee is recovering a substantial portion of the Personal Charges claim, he is releasing the Business Charges claim based on the likelihood that American Express will be able to sustain a good faith and for value defense, and he is releasing the preference claim based on its novelty and difficulty, the likely merit of American Express' asserted defenses, and on the likelihood that if a forensic accounting is required its cost is likely to consume most or all of the stake. Accordingly, the trustee requests that his proposed compromise to release American Express from all known or unknown claims in exchange for its payment of $1,375,000.00 be approved.

### Procedure to Object and Request a Hearing

**PLEASE TAKE FURTHER NOTICE** that this matter is governed by Bankruptcy Local Rule 9014-1(b)(3), which states:

1. Any objection to the requested relief, or a request for hearing on the matter, must be filed and served upon the initiating (undersigned) party within twenty-one (21) days of mailing the notice;

2. Any objection or a request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position;

3. If there is no timely objection to the requested relief or a request for hearing, the court may enter an order granting the relief by default;

4. The initiating party will give at least seven (7) days written notice of the hearing to the objecting or requesting party, and to any trustee or committee appointed in the case.

Any objection or request for hearing must be served on the undersigned and filed with the Clerk of the United States Bankruptcy Court, Northern District of California, Oakland Division, 1300 Clay Street, Room 300, Oakland, CA 94612, or in the case via Pacer, within 21 days of the mailing of this notice (i.e., July 23, 2019).

**PLEASE TAKE FURTHER NOTICE** that the Motion and supporting declaration of Mark S. Bostick together with a copy of the parties' settlement agreement are filed and may be obtained from the Bankruptcy Court Clerk, through Pacer, or upon request from the undersigned.

Dated: July 2, 2019

/s/ Mark S. Bostick
Mark S. Bostick (Bar No. 111241)
WENDEL, ROSEN, BLACK & DEAN, LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036
Tel: (510) 834-6600
Email: mbostick@wendel.com
Attorneys for Michael G. Kasolas, Trustee